**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**Houston Division**

| | |
|---|---|
| SIOBHAN FLEMING; | §<br>§<br>§ |
| Plaintiff, | §<br>§ |
| | § Case No.: |
| | §<br>§ |
| v. | §<br>§ |
| | § |
| THE UNIVERSITY OF ST. THOMAS; | §<br>§ |
| | § |
| Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Siobhan Fleming, Plaintiff, and hereby files this Original Complaint against The University of St. Thomas ("St. Thomas"), Defendant, and for cause of action would show this Court and Jury as follows:

### INTRODUCTION

This is a gender discrimination and retaliation case.  Plaintiff at all times relevant was, and still is, Associate Vice President For Academic Affairs at Defendant St. Thomas. During the course of her employment, Plaintiff received a disturbing email from a fellow St. Thomas administrator with whom she worked closely. Embedded in the email was a nude "selfie" depicting the male administrator holding his erect penis.  Plaintiff immediately reported the e-mail and obscene photograph to St. Thomas' administrators and requested a formal investigation pursuant to St. Thomas' Sexual Misconduct and Sexual Assault Policy.  St. Thomas ignored her

1

complaint, encouraged her to remain quiet and never initiated any such investigation. Instead, St.

Thomas began blatantly retaliating against Plaintiff for reporting the sexual harassment she

experienced.  Plaintiff then reported the retaliation she suffered to St. Thomas'

administrators.  St. Thomas again did nothing meaningful in response to Plaintiff's additional

report, and the retaliation escalated.  St. Thomas' discrimination and retaliation was, and still is,

devastating to Plaintiff. This suit seeks justice for St. Thomas' illegal acts.

## JURISDICTION AND VENUE

1. This action involves federal questions under Title VII of the Civil Rights Act of 1964, 42

   U.S.C. § 2000e and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681.

   As such, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3).

2. This Court has supplemental jurisdiction over state law claims in this action under 28

   U.S.C. § 1367(a) because they arise out of the same case or controversy.

3. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28

   U.S.C. § 1391 because the events establishing the basis for Plaintiff's causes of action

   occurred within the Southern District of Texas, Houston Division.

## JURY DEMAND

4. Plaintiff demands a jury trial on all issues so triable.

## PARTIES

5. Plaintiff Dr. Siobhan Fleming is an individual who was at all material times, and still is,

   employed by Defendant St. Thomas in Houston, Texas.

6. Defendant St. Thomas is a private Catholic university operating in Houston, Harris

   County, Texas and may be served with process via its President, Richard Ludwick at

   3800 Montrose, Houston, Texas 77006.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES
## AND TIMELINESS OF SUIT

7.  Plaintiff filed a "Charge of Discrimination" (Exhibit A) on October 3, 2017, within 180

days and 300 days of the illegal adverse employment action of which she complains. The

charge was dual filed with the United States Equal Employment Opportunity

Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division

("TWC").  On October 20, 2017, Plaintiff received a "Notice of Right to Sue" letter

(Exhibit B) from the EEOC that was mailed October 17, 2017.  This action is filed within

ninety (90) days of receipt of that notice and within two years of Plaintiff's filing of her

Charge of Discrimination.

## FACTS

1.  Plaintiff Siobhan Fleming's personal and professional connections with St. Thomas run

deep. Not only has the university served as her religious community her entire life --  she

was married by the Basilian Fathers in 1991, her father's funeral mass was held at the

University Chapel of St. Basil, her children have received First Communion and

confirmation classes from the Basilian Fathers at the university's Chapel of St. Basil,

where she and her children attend mass.  As a 1987 graduate of St. Thomas, she is one of

17 family members who have attended the small university. Her father and brother have

both served on the university's board of directors.

2.  On June 11, 2013, Dr. Fleming was offered the position of St. Thomas' Associate Vice

President for Academic Affairs – Institutional Effectiveness and Assessment, which she

enthusiastically accepted.

3.      Dr. Fleming's immediate supervisor was Dr. Dominic Aquila ("Aquila"), St. Thomas'
        Provost and Vice President for Student Affairs. Aquila continued as Dr. Fleming's
        supervisor until resigning from this position at the end of the Fall 2017 semester.

4.      In her position, Dr. Fleming's job responsibilities included, but were not limited to:

- Taking a leading role in all activities related to compliance with the Southern
  Association of Colleges and Schools Commission on Colleges ("SACSCOC")
  Principles of Accreditation, including preparing for reaffirmation and developing
  the Quality Enhancement Plan (QEP);

- Providing expert consultation to academic and administrative units on outcomes
  articulation and assessment, research methodology, data management, and data
  analysis and interpretation for their own programs of self-study, planning and
  assessment activities;

- Assisting in developing and implementing academic assessment efforts including
  the core curriculum, program reviews, and outcome assessment plans;

- Directing the development and implementation of UST and national academic
  surveys;

- Ensuring all accreditation reports are completed as required and submitted in a
  timely manner;

- Designing or identifying, collect and maintain university-wide assessment results,
  analyzing and interpreting data to support evidence-based decision-making;

- Supervising the staff of the Office of Institutional Assessment and Effectiveness,
  including staff that work on grant-related assessment projects;

- Conducting special studies as requested by senior leadership of the university.

5. By all accounts, Dr. Fleming was an exemplary employee.  She consistently received excellent performance reviews, and was publicly lauded by St. Thomas in school newsletters and social media posts for her outstanding work and commitment to the mission of St. Thomas.

6. Dr. Fleming also spearheaded St. Thomas' reaffirmation efforts, and was instrumental in securing St. Thomas' reaffirmation from the SACSCOC.

7. On August 20, 2015, Dr. Fleming received an obscene sexual photograph via email from a male St. Thomas administrator with whom she worked regularly ("Sender"). The photograph, embedded in the message, depicted the Sender's nude groin area and erect penis. The message was addressed to Aquila, with a copy to Dr. Fleming and Sender's supervisor, Fr. Donald S. Nesti.. Sender sent the e-mail from his St. Thomas e-mail account, and Dr. Fleming received the e-mail on her St. Thomas e-mail account.

8. Dr. Fleming was shocked when she opened the email and was further alarmed by the text accompanying the photograph, which she interpreted to suggest that he was masturbating at home and planned to come in later "to do as much of this as I can."

9. That same day, Fleming contacted Aquila about the disturbing message and obscene image.  Aquila told Dr. Fleming to delete it immediately and not to tell anyone about it.

10. Dr. Fleming repeatedly requested over the next several days that St. Thomas investigate Sender's conduct as a violation of St. Thomas' Sexual Misconduct Policy.

11. St. Thomas maintains a Sexual Misconduct and Sexual Assault Policy ("Sexual Misconduct Policy") that was in effect throughout the duration of the facts alleged herein.

12. The Sexual Misconduct Policy explicitly identifies "Distribution of pornographic material" as a form of sexual misconduct prohibited.  The Policy also identifies Retaliation as a form of sexual harassment prohibited by the Policy.

13. With respect to St. Thomas' responsibilities, the Policy states that upon receiving a report of sexual misconduct, St. Thomas, "…is obligated under the law to investigate the complaint, to take action to eliminate sexual misconduct, sexual harassment, and sexual assault, prevent its recurrence and address its effects. An administrative investigation under Title IX must be initiated if the University has enough information to reasonably determine key facts, e.g., time, date, location and names of parties involved in an alleged incident."

14. The Policy also states that the investigation will be conducted by St. Thomas' Title IX Coordinator, and will include a review of obtained statements, interviews with both parties, interviews with third party witnesses, and review of relevant documentary evidence.

15. The Policy states that St. Thomas is obligated to conduct an investigation, regardless of the complainant's desire to participate in any such investigation.

16. The Policy also outlines an explicit procedure for handling reports of employee on employee sexual misconduct.  The Policy outlines the following steps to address an allegation of employee on employee harassment:

   a.  Meet with the charging employee and obtain a written statement to ensure all details are documented.

   b.  Investigate the allegations –meet with the employee that the charge has been filed against and obtain a written statement from them detailing what occurred.

6

    c.  Interview other employees/managers, depending on the allegations, to obtain supporting information.

    d.  Have follow up meetings with both parties, if necessary.

    e.  A determination will be made after reviewing all the facts gathered, conversations with the parties involved, consulting with legal counsel, consulting, if necessary, with the department manager, and evaluating the merits of the allegations. The Associate Vice President for Human Resources is responsible for affirming the final determination.

17. Finally the Policy states that, "Upon completing the investigation, the following actions will be taken depending on the outcome.

    a.  Allegations have merit – depending on the seriousness and egregious nature of the actions that occurred, the employee will either be placed on leave while the investigation is conducted, be given a written reprimand with termination if another incident occurs or be terminated. If the employee is not terminated, they will be instructed to avoid interacting with the charging party. Meet with each individual to communicate and outcome.

    b.  Allegations do not have merit - a meeting will be held with each party to convey the outcome of the investigation. The charging party will be asked for any additional information they think would be important. If none is given, the case will be closed.

18. On August 22, 2015, Aquila responded to Dr. Fleming that he had spoken to St. Thomas' attorneys who had informed him that the obscene e-mail did not violate St. Thomas' policies because the sender did not intend to harass Dr. Fleming.  Accordingly, Aquila

told Dr. Fleming there was nothing further that could be done to respond to Dr. Fleming's complaint.

19.  On, or about, August 21, 2015, Dr. Fleming also informed her brother and then St. Thomas Board Member, Michael Fleming, about the lewd and obscene e-mail and her complaint to Aquila.  Michael Fleming in turn told the Chair of the St. Thomas Board of Directors, Dr. Bert Edmundson. Michael Fleming also shared with Dr. Edmundson. that Dr. Fleming was concerned that Aquila might retaliate against her for making the complaint.  Dr. Edmundson assured Fleming that he would ensure Dr. Fleming would not experience any retaliation.

20. Dr. Edmundson informed Dr. Robert Ivany, then President of St. Thomas, about the lewd and obscene photograph and Dr. Fleming's complaint.  Shortly thereafter, Aquila confronted Dr. Fleming in her office and berated her for informing members of the board about the obscene image she received. Aquila told Dr. Fleming that he was trying to keep this from the Board, but now that they knew, St. Thomas would be forced to conduct an investigation.

21. Aquila told Dr. Fleming that Randy Graham, St. Thomas' Title IX Coordinator, would be contacting her to interview her.

22. At no time did Graham contact Dr. Fleming in connection with an investigation for a violation of St. Thomas' Sexual Misconduct Policy.  Dr. Fleming is informed, believes, and on that basis alleges that St. Thomas never investigated her complaint as a violation of St. Thomas' Sexual Misconduct Policy.

23. In mid-September of 2015, Graham requested a meeting with Dr. Fleming.  At that meeting, Graham, along with Gary McCormack, St. Thomas' Vice President of

Technology, informed Dr. Fleming that St. Thomas had investigated the lewd e-mail as a potential violation of St. Thomas' Misuse of University Technology Resources Policy. Graham continued that he had searched Sender's computer but did not find any pornography.

24. Also at this meeting, Graham informed Dr. Fleming that they had interviewed Sender's supervisor, the other recipient of the lewd email. It became apparent that while all the men involved in the incident had been interviewed, she, the complainant and the only woman, had not.

25. Graham further explained that he had "counseled" Sender, "off the record," to get psychological help.  He went on to speculate that Sender would leave St. Thomas within the year because he was "up to bad things" and knew that all of the administrators were aware of the lewd e-mail. Sender did not leave. Sender is still employed with St. Thomas in the same position.

26. Finally, Graham informed Dr. Fleming that the matter had been closed and that a note had been placed in Sender's personnel file indicating that if he engaged in this conduct again, accident or not, he would be terminated.

27. Dr. Fleming asked Graham why her complaint was not investigated under St. Thomas' Sexual Misconduct Policy, to which Graham responded that Dr. Fleming did not file a complaint of sexual misconduct.  This contradicted Dr. Fleming's explicit report to Aquila and express request that St. Thomas investigate whether Sender violated St. Thomas' Sexual Misconduct Policy.  Graham also informed Dr. Fleming that she could still file another Title IX complaint, but discouraged her by adding, "how do you think that's going to go since we already found that [Sender] isn't going to be terminated?"

28. From the time she received the obscene photograph, until the present, Dr. Fleming has been continually exposed to a sexually hostile environment. After St. Thomas' sham of an investigation, Graham told Dr. Fleming that she was required to continue to work with Sender, despite Dr. Fleming's protestations that she did not feel comfortable working with Sender.  Even after Dr. Fleming reminded Graham that he had told Sender to get psychological help, Graham warned Dr. Fleming that if she did not continue to work with Sender, she would be in violation of her job duties and there could be adverse consequences as a result.

29. St. Thomas also retaliated against Dr. Fleming for making her report of sexual misconduct by systematically stripping her of her professional responsibilities.  Since making her report of sexual misconduct, Dr. Fleming was removed as: (1) returning staff mentor in the First Year Experience program, (2) the Chair of the Staff Affairs Policy Committee, (3) a member of the Core Curriculum Review Committee, (4) a member of the Curriculum Committee, (5) a member of the Marketing Communications & Enrollment Management Committee of the Board of Directors, (6) leader of the newly formed High Impact Education Practice Coordinating group, (7) the Student Newspaper faculty adviser, (8) a member of multiple 2015-2016 Task Forces, (9) a member of the 2016-2017 Subcommittee on Assessment of the Non-academic Task Force, (10) a member of the Academic (Deans) Council, (11) a member of the Academic Affairs Committee of the Board Meeting, (12) a member of the President's Cabinet Meeting, and (13) a member of the Tuition Review Committee.

30. St. Thomas also retaliated against Dr. Fleming by assigning her specific job responsibility of submitting reports to the SACSCOC to another employee, removing her access to university databases and other tools necessary for her to do her job.

31. With respect to Dr. Fleming's removal as the Student Newspaper Adviser, this action was taken despite Dr. Fleming being nominated by the students as Adviser of the Year.  The position was then given to an adjunct instructor who lacked the qualifications set forth by St. Thomas' accrediting agency to even serve as an adjunct instructor. Notably, the adjunct instructor graduated in May 2017 with a master's degree from the Sender's department -- a field completely unrelated to journalism or communication, which is required by the accrediting agency.

32. On or about May 10, 2017, Dr. Fleming's brother spoke with the Chair of the Board of Directors, Dr. Bert Edmundson, and informed him of the continuing retaliation Dr. Fleming was suffering and the failure to investigate her complaint regarding the obscene email. Edmundson promised to look into it. On or about June 15, 2017, it was announced the Sender's department had bestowed an honorary award on Edmundson. Edmundson never responded to Michael Fleming.

33. St. Thomas also retaliated against Dr. Fleming by methodically isolating her from all co-workers and colleagues.  On May 18, 2017, Dr. Fleming was inexplicably removed as the supervisor for St. Thomas' Quality Enhancement Program, and she was given no explanation about who would be supervising the program in her absence.  That same day, Dr. Fleming was told by Vice President of Technology, Gary McCormack, that her administrative assistant was terminated by Aquila, and her Tech Assessment Coordinator was transferred to another office.  Also that same day, Fleming was informed that Aquila

11

told a member of St. Thomas' Board, Mr. Curtis Huff, that Dr. Fleming's entire office

should be eliminated.

34. Also in retaliation, St. Thomas removed photographs of, and information about, Dr.

Fleming from its Alumni page and the university website.

35. On June 5, 2017, Dr. Fleming met with Graham to report the retaliation she was

experiencing as a result of her report. She also formally requested again that St. Thomas

investigate her report that Sender violated St. Thomas' Sexual Misconduct Policy.

36. On June 12, 2017, Dr. Fleming filed a formal, written complaint outlining the retaliation

that she experienced, and was continuing to experience, as a result of making a complaint

of sexual misconduct.  She also formally requested, in writing, that St. Thomas

investigate Sender's conduct as a potential violation of St. Thomas' Sexual Misconduct

Policy.

37. On June 19, 2017, Dr. Fleming learned that St. Thomas had engaged an outside firm to

conduct an investigation into her complaint of retaliation. Hopeful that her concerns

would finally be addressed, Dr. Fleming met with an investigator on July 26, 2017.

However, the investigator terminated the interview shortly after it began when Dr.

Fleming's then counsel raised questions about the investigation process and the intended

method of delivery of written or verbal findings. The interview was never rescheduled

and Dr. Fleming never provided a statement to the investigator.

38. On or about August 8, 2017, St. Thomas' legal counsel informed Plaintiff's then counsel

that the outside investigation was completed but did not offer any final report or relay the

outcome of the investigation. Neither Graham nor anyone else with St. Thomas ever

12

communicated with Dr. Fleming about the investigation or the results. To Dr. Fleming's knowledge, no further action was taken.

39. On or about August 23, 2017, Aquila announced he planned to step down from the position of Provost and Vice President for Academic Affairs at the end of the Fall 2017 semester. He remained Dr. Fleming's supervisor throughout this time and is currently still employed by St. Thomas.

40. On September 27, 2017, Dr. Fleming filed a complaint with the Department of Education Office for Civil Rights ("OCR"). In her complaint, Dr. Fleming detailed receiving and reporting the obscene photograph, as well as the retaliation she had suffered up until that time.

41. On October 3, 2017, Dr. Fleming filed a Charge of Discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission alleging discrimination based on sex and retaliation under Title VII.

42. On or about October 26, 2017, St. Thomas' President Dr. Richard Ludwick, directed the St. Thomas Board of Directors and administrators not to interact with Dr. Fleming.  He gave this instruction immediately after receiving the EEOC's Right to Sue letter in connection with Dr. Fleming's charge filed with the EEOC.

43. To date, Plaintiff's job responsibilities have been reduced to virtually nothing.  She has also been completely isolated due to Edmundson's instruction to the St. Thomas Board and administrators not to interact with her.  Dr. Fleming works in a two-story building, on the second floor, completely alone.  Aquila's and St. Thomas' actions have been, and are, clearly intended to make Dr. Fleming's work environment so unbearable that she resign.

44. Plaintiff is informed, believes and on that basis alleges that St. Thomas has also retaliated against other administrators for expressing concern with the way St. Thomas handled Plaintiff's report.

## CAUSES OF ACTION

## VIOLATION OF TITLE IX – DISCRIMINATION ON THE BASIS OF GENDER

45. Plaintiff incorporates all paragraphs of this Complaint as if alleged herein.

46. St. Thomas receives federal financial assistance and is therefore subject to the dictates of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681.

47. Defendant discriminated against Plaintiff on the basis of her gender in the way it responded to her complaint of sexual harassment by:

    a.  Failing to investigate Plaintiff's report as sexual harassment;

    b.  Failing to remediate Plaintiff's sexually hostile work environment;

    c.  Forcing Plaintiff to continue to work with Sender after she reported Sender's inappropriate sexual conduct;

    d.  Retaliating against Plaintiff for reporting sexual misconduct; and

    e.  Failing to investigate Plaintiff's report that she was being retaliated against for reporting sexual misconduct.

48. As a result of St. Thomas' violation of Title IX, Plaintiff has suffered actual damages in the form of lost wages.  Plaintiff has also suffered compensatory damages, including emotional pain and suffering, loss of standing in the community, damage to her reputation, inconvenience, loss of enjoyment of life, mental anguish and other losses.

## **VIOLATION OF TITLE IX – RETALIATION**

1. Plaintiff incorporates all paragraphs of this Complaint as if alleged herein.

2. St. Thomas receives federal financial assistance and is therefore subject to the dictates of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681

3. Defendant retaliated against Plaintiff because she complained of sexual harassment and sexual misconduct committed by a male colleague.  Such retaliation is a form of intentional gender discrimination because it subjected Plaintiff to differential treatment.

4. Plaintiff's complaints and follow up attempts to seek enforcement of St. Thomas's sexual misconduct policy, both internally with university officials and externally with OCR, constitute protected activities under Title IX.

5. Defendant's discrimination was gender- based because it was an intentional response to an allegation of sexual misconduct committed by a male colleague.

6. As a result of St. Thomas' violation of Title IX, Plaintiff has suffered actual damages in the form of lost wages.  Plaintiff has also suffered compensatory damages, including emotional pain and suffering, loss of standing in the community, damage to her reputation, inconvenience, loss of enjoyment of life, mental anguish and other losses.

## **VIOLATION OF TITLE VII and the TCHRA**

7.  Plaintiff incorporates all paragraphs of this Complaint as if alleged herein.

8. Defendant violated federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, by retaliating against Plaintiff.

9. Defendant violated the laws of the state of Texas, including 21.055 of the Texas Commission on Human Rights Act ("TCHRA"), which provides that an "employer…

commits an unlawful employment practice if the employer…retaliates or discriminates against a person who, under this chapter …opposes a discriminatory practice."

10. Plaintiff is an employee of St. Thomas within the meaning of Title VII and the TCHRA.

11. Defendant is an employer within the meaning of Title VII and the TCHRA with more than 500 employees.

12. As a result of St. Thomas' violation of Title VII, Plaintiff has suffered actual damages in the form of lost wages.  Plaintiff has also suffered compensatory damages, including emotional pain and suffering, loss of standing in the community, damage to her reputation, inconvenience, loss of enjoyment of life, mental anguish and other losses.

## **Prayer for Relief**

13. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited and called to answer, and that on final judgment Plaintiff be granted relief under Federal law, including:

      f.   Damages for lost wages, past and future;

      g.   Compensatory damages;

      h.   Damages for emotional distress and mental anguish, past and future;

      i.   Punitive damages;

      j.   Attorney fees, expert fees, expenses and costs of suit;

      k.   Interest allowed by law;

      l.   General damages;

      m.  Special damages; and

      n.   Such other and further relief that is proven to be appropriate.

Dated:  January 15, 2018        Respectfully submitted,

*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
Attorney-in-charge
Sheila@zalkin.com
Alexander S. Zalkin (*pending pro hac vice*)
alex@zalkin.com
Irwin M. Zalkin (*pending pro hac vice*)
irwin@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

*Attorneys for Plaintiff Siobhan Fleming*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.

*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
Sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Dated: January 15, 2018

EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 460-2018-00021 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Siobhan U. Fleming | | 1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 26131 Hideaway Run, Spring, TX 77389 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNIVERSITY OF ST. THOMAS | 500 or More | (713) 525-2160 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3800 Montrose Blvd.,  Houston, TX 77006 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 08-20-2015 | 10-03-2017 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about August 20, 2015, I reported to my supervisor that I received a sexually obscene photo through my work email account.  The email was from Adam Martinez H/M (Associate Director of the Center of Faith and Culture) and it was directed to Dominic Aquila W/M (PROVOST) and was CC'd to me.   I immediately reported the incident to University officials and the issue was investigated.

After, I reported the inappropriate email.  My supervisor Dominic Aquila began to retaliate against me and subjected me to different terms and conditions of employment because of my protected class.  I was removed for committees, excluded form meetings and the QEP writing program was moved from my direct supervision.  These are just some of the examples.

I believe that I was retaliated against for engaging in a protected activity and discriminated against because of my Sex (Female), in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Oct 03, 2017 _____ *[signature]*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT B

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | |
|---|---|---|
| To: | Siobhan U. Fleming<br>26131 Hideaway Run<br>Spring, TX 77389 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2018-00021 | **Vernon M. Gardner, Jr.,**<br>**Investigator** | (713) 651-4938 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Marina Guerra*                    Oct 17, 2015

_____        _____
Rayford O. Irvin,                              *(Date Mailed)*
**District Director**

Enclosures(s)

cc:       Randy Graham
          Associate Vice President
          of HR
          UNIVERSITY OF ST THOMAS
          3800 Montrose Blvd.
          Houston, TX 77006

          David Tang
          DAVID TANG LAW FIRM
          9801 Westheimer Road
          Suite 300
          Houston, TX 77042

          TWC- Civil Rights Division
          101 E. 15th Street, Rm. 144-T
          Austin, TX 78778-0001

Enclosure with EEOC
Form 161-B (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have *made* a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.